

**FILED & ENTERED**

**OCT 23 2014**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** zick    **DEPUTY CLERK**

# NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>JONATHAN ZIV and<br>JAYNE ELIZABETH ZIV,<br><br><br><br><br><br><br>                    Debtors. | Case No. 9:12-bk-13712-PC<br><br>Chapter 7<br><br>**MEMORANDUM DECISION**<br><br>Date:    September 23, 2014<br>Time:    9:30 a.m.<br>Place:   United States Bankruptcy Court<br>              Courtroom # 201<br>              1415 State Street<br>              Santa Barbara, CA  93101 |

At the above captioned date and time, the court considered its Order to Show Cause Why Rosa Lopez and Mario Valencia Should Not Be Held in Contempt of Court for Knowingly Violating the Discharge Injunction ("OSC") entered on August 19, 2014.  Rosa Lopez ("Lopez") and Mario Valencia ("Valencia") filed written opposition to the OSC, and appeared in person and through counsel at the hearing on the OSC.  Having considered the papers, the evidentiary record, and arguments of counsel, the court will find Lopez and Valencia in contempt for willful violation of the discharge injunction in this case based upon the following findings of fact and conclusions of law made pursuant to F.R.Civ.P. 52(a), as incorporated into FRBP 7052 and applied to contested matters by FRBP 9014(c).

## I. STATEMENT OF FACTS

Jonathan Ziv ("Ziv") is a dentist. On January 30, 2007, Rosa Lopez ("Lopez") consulted Ziv regarding dental work and ultimately elected to receive from Ziv treatment for full individual dental implants at a cost of $80,000. Over the next four years, Lopez paid Ziv a total of $80,100 and received treatment from Ziv (and doctors to whom she was referred by Ziv) ostensibly for dental implants. In August 2011, after receiving upper dentures, lower veneers and bridges rather than dental implants, Lopez asked for her money back. When Ziv refused, Lopez filed a Request for Peer Review with the California Dental Association ("CDA") on April 5, 2012.

On October 4, 2012, while arbitration was pending before the CDA, Ziv and his spouse (either collectively or individually, "Ziv") filed a voluntary petition under chapter 7 in the above referenced case. Lopez was not listed by Ziv as a creditor in the schedules nor was the CDA complaint filed against Ziv disclosed in the statement of financial affairs. On October 4, 2012, the clerk issued a Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines which, in pertinent part, set a meeting of creditors on November 19, 2012, and a deadline of January 18, 2013, for the filing of a complaint either objecting to the debtors' discharge or the nondischargeability of a debt. According to the Certificate of Notice [Dkt # 6] filed on October 7, 2012, Lopez is not listed as a person to whom the notice was served. After the meeting of creditors was concluded, the trustee filed a report of no distribution. On January 28, 2013, Ziv and his spouse received a discharge. The case was closed on January 31, 2013.

Despite the pendency of his chapter 7 case, Ziv continued to defend Lopez' complaint before the CDA. On March 5, 2013, the CDA ruled in favor of Lopez (the "Resolution Letter"). In the Resolution Letter, the CDA instructed Ziv to refund the sum of $30,530 to Lopez "within 10 working days following the expiration of the appeal period or the determination of any appeal of [the] decision." Lopez testified that:

> The Appeals Panel rejected his appeal on July 17, 2013. On September 11, 2013, Ziv and I were notified that the CDA Council on Peer Review had referred the matter involving me and Ziv to the CDA Judicial Council, citing Ziv's potential violation of the CDA's Code of Ethics. On September 20, 2013, the CDA notified me that by referring the matter to the CDA's Judicial Council, the Peer Review Committee had exhausted all of its available options to resolve the matter,

2

and that it would not be able to enforce the Resolution should Ziv continue to choose not to comply. Upon reviewing this letter, I . . . contacted attorney Mario Valencia to explore my options for enforcement of the CDA Award.[1]

On October 18, 2013, Lopez filed a Petition to Confirm Contractual Arbitration Award in Case No. BS145690, Lopez v. Ziv, in the Superior Court of California, County of Los Angeles, seeking a judgment in the principal sum of $30,530, interest at 10% per annum, attorneys' fees and costs (the "LACS Case"). Lopez is represented in the LACS case by attorney Mario Valencia ("Valencia"). In response to the LACS Case, Ziv contacted the law firm of Margulies Faith LLP. There is no evidence that either Lopez or Valencia had actual or constructive knowledge of Ziv's bankruptcy prior to filing the LACS Case.

First Cease and Desist Letter

By letter dated December 16, 2013, Jeremy Faith ("Faith") advised Valencia that Ziv and his spouse had filed a voluntary chapter 7 petition in Case No. 9:12-bk-13712-RR on October 4, 2012, and that Valencia "may be trying to collect a pre-petition obligation from the debtors in connection with Superior Court Case Number LAV 12V05940."[2] Faith explained that 11 U.S.C. § 362(a) prohibited, among other things, the taking of "any action against the debtors or the debtors' property to collect any debt."[3] Faith included in the letter a copy of Ziv's personal bankruptcy petition, the docket sheet, and the Discharge of Debtor entered on January 28, 2013.[4] Faith advised Valencia that he "must immediately cease and desist from any further collection actions or face sanctions in the Bankruptcy Court."[5] In the letter, Faith did not state specifically that Ziv had received a discharge in the case nor the date of the discharge, but a copy of the discharge order was enclosed. Faith noted that Valencia and his client "may not have been

---

[1] Opposition to Order to Show Cause Re Contempt ("Opposition"), 24:11-20.

[2] Exhibits to Debtors' Motion for an Order to Show Cause Why Rosa Lopez and Mario Valencia Should Not Be Held in Contempt of Court for Knowingly Violating the Discharge Injunction ("Ziv Exhibits"), Exh. # C:21.

[3] Id.

[4] Id. at 23-31.

[5] Id. at 21.

informed of the Bankruptcy Case," but "now that [they had] notice thereof, [they were] bound by the discharge injunction . . . ."[6] Faith also explained that, because Ziv's bankruptcy was a "no-asset" case, the "discharge applies to any debt owed to any individual or organization whether or not it was listed in the bankruptcy schedules," citing <u>Beezley v. California Land Title Co. (In re Beezley)</u>, 994 F.2d 1433 (9th Cir. 1993).[7]

Valencia testified that he received Faith's letter, noted that it referred to an incorrect state court case number, but understood it to state that Ziv was in bankruptcy and that the automatic stay applied to the LACS Case. However, it appears that Valencia did nothing in response to the letter since it "did not demand, request or suggest the dismissal of the LACS Case."[8] The LACS case remained pending between Lopez and Ziv.

Valencia testified that he consulted "two experienced bankruptcy practitioners" by telephone on April 24, 2014, regarding the impact of Ziv's bankruptcy on the LACS Case. Valencia does not disclose the identity of these individuals nor have either of these individuals submitted a declaration in support of Lopez' opposition to the OSC. Valencia testified that he "learned that Ziv's corporation could not have received a discharge in its Chapter 7 case, and that even in an active bankruptcy case, relief from stay is frequently granted to pursue a debtor's insurance policy."[9] By letter dated May 2, 2014, Valencia advised Faith of his client's intention "to proceed with enforcement of the arbitration award against Dr. Ziv." In his letter, Valencia states:

> My client did not move forward with the enforcement of the arbitration award because you informed us of as [sic] pending bankruptcy for Jonathan Ziv, D.D.S., Inc. However, I am informed that the bankruptcy proceeding has been concluded, and as a result my client's civil matter is no longer stayed pending said bankruptcy.[10]

---

[6] Id.

[7] Id.

[8] Opposition, 18:27-28.

[9] Id. at 19:4-8.

4

Valencia concluded his letter by requesting information from Faith regarding Ziv's liability insurance for the purpose of submitting a claim against such insurance on behalf of Lopez.

<u>Second Cease and Desist Letter</u>

By letter dated May 2, 2014, Faith again advised Valencia to stop his actions on behalf of Lopez to collect against Ziv. In his letter, Faith states:

> I am writing in response to your letter to me of the same date indicating that you intend to move forward with collection actions against my client Dr. Jonathan Ziv. Your letter references the bankruptcy case of Dr. Ziv's personal corporation, but perhaps you have forgotten that Dr. Ziv and his wife filed a personal case as well. Enclosed is a copy of my letter to you of December 16, 2013 which provided you notice of Dr. Ziv's personal bankruptcy case and the fact that Ms. Lopez' claim was discharged by such bankruptcy filing. As such, any attempts to collect against Dr. Ziv would violate the Discharge Injunction under 11 U.S.C. § 542(a)(2). I anticipate that any collection actions will be immediately halted now that you and your client have all the facts before you.[11]

Valencia testified that "[t]his letter, like Faith's December 2013, did not demand, request, or suggest the dismissal of the LACS Case."[12] Notwithstanding Faith's second demand to cease collection actions, the LACS Case remained pending.

By letter dated May 28, 2014, Faith advised Valencia that Ziv had previously submitted Lopez' claim to his professional liability carrier, Dentist's Advantage, as Claim # 2013-114542, and that the claim was denied on October 28, 2013. Faith enclosed a copy of the declination letter and concluded by stating that he "assum[ed] no further action [would] be taken in the state court, as such activity would violate the discharge injunction received by Dr. Ziv in his Chapter 7 Case."[13]

On July 9, 2014, Valencia "had a telephone conversation with Ziv." Valencia "informed Ziv that at a Status Conference set for the next day [in the LACS Case], [he] would represent to the Court that there are possible bankruptcy issues, and request that the Status Conference be

---

[10] Ziv Exhibits, Exh. # D:33.

[11] Id., Exh. # E:36.

[12] Opposition, 19:13-14.

[13] Ziv Exhibits, Exh. # F:48.

5

continued pending resolution of those issues."[14]  Valencia further testified that he appeared telephonically at the Status Conference in the LACS Case on July 10, 2014.  Ziv was represented by counsel at the Status Conference, who argued that the case should be dismissed.  Valencia, however, pursued and obtained a continuance of the Status Conference to September 8, 2014.

Third Cease and Desist Letter

By letter dated July 11, 2014, Craig G. Margulies ("Margulies") of Margulies Faith LLP again demanded that Valencia cease his efforts to collect from Ziv on behalf of Lopez.  After referring to the firm's prior letters to Valencia dated December 16, 2013, May 2, 2014, and May 28, 2014, Margulies stated:

> Although Dr. Ziv is prepared to immediately file a Motion for Contempt Sanctions in Bankruptcy Court, to preserve his peace, he is willing to permit you and your client one final opportunity to resolve this issue amicably and without the involvement of the Bankruptcy Court.  You therefore have until 4 p.m. PST on July 14, 2014 to (1) provide a conformed copy of a Notice of Dismissal of the State Court Case which dismisses the State Court Case with prejudice; and (2) transmit to our office $2,000.00 in certified funds, payable to 'Margulies Faith LLP Client Trust Account', to compensate Dr. Ziv for a mere portion of his attorneys' fees.  Should you fail to take the appropriate action, we will proceed with filing a Motion for Contempt.[15]

A series of telephone calls and email exchanges between Valencia and Margulies followed Margulies' July 11th letter, the upshot of which was that Valencia refused to dismiss the LACS Case because he did not have authority from his client to do so.  In his email dated July 11, 2014, Valencia called Margulies' "threats of contempt and sanctions . . . without merit," reasoning that "[i]f what the bk attorney told us regarding your client's failure to provide notice to my client of his bk filing coupled with the fact that your client failed to list my client as a creditor then my client is within her rights to reopen the bk case and pursue her suit against Dr. Ziv pending the outcome in the bk case."[16]  By email dated July 15, 2014, Valencia told Margulies that he would

---

[14] Opposition, 19:21-25.

[15] Ziv Exhibits, Exh. # G:55.

[16] Id. at Exh. # H:58.

6

speak only to Ziv about the LACS Case until he was provided with "formal written notice that [Margulies Faith LLP was] formally retained in the [LACS Case]."[17]

### Fourth Cease and Desist Letter

On July 23, 2014, Nina Javan ("Javan") of Margulies Faith LLP sent a lengthy email to Valencia summarizing the reasons why Lopez' claim in the LACS Case was discharged in Ziv's chapter 7 case, notwithstanding the fact that Lopez was neither scheduled as a creditor nor given notice of the bankruptcy case. Javan explained that the claim would not be excepted from discharge under § 523(a)(2), (a)(4), or (a)(6) because it "is based on a simple dispute regarding the quality of dental services provided."[18] Javan concluded by stating that "as a claim which arose before the Petition Date and which is not excepted from discharge under § 523, the Lopez Claim is a discharged debt subject to the provisions of the discharge injunction of § 524."[19] Valencia did not respond to Javan's email.

On July 24, 2014, Ziv reopened the bankruptcy case. On August 19, 2014, the court issued its OSC based on the motion, declarations, and exhibits filed by Ziv. On September 9, 2014, Lopez and Valencia filed their written opposition to the OSC, to which Ziv filed a reply on September 16, 2014.

At the conclusion of a hearing on September 23, 2014, the court directed Lopez and Valencia to (1) dismiss the LACS Case without prejudice not later than September 26, 2014; and (2) if Lopez believed that she had grounds therefor, (a) file a complaint seeking a determination that her claim against Ziv is nondischargeable under 11 U.S.C. § 523(a)(2), (a)(4) and/or (a)(6); and (b) serve the summons and complaint not later than October 6, 2014. The court continued the OSC hearing to October 21, 2014, pending dismissal of the LACS Case and the filing of such an adversary proceeding.[20]

---

[17] Id. at Exh. # J:64.

[18] Id., Exh. # J:64.

[19] Id.

7

Prior to the continued hearing on October 21, 2014, the matter was taken under submission.

## DISCUSSION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

A. Standard Applicable to Contempt for Violation of the Discharge Injunction

"Debtors file bankruptcy cases to stop collection activities by their creditors, and to obtain debt relief." In re Dickerson, 510 B.R. 289, 296 (Bankr. D. Idaho 2014). "The § 362(a) automatic stay, which arises when a bankruptcy case is commenced, stops creditors and the Code's discharge provision gives debtors their 'fresh start.'" Id. A discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor, whether or not such debt is waived[.]" 11 U.S.C. § 524(a)(2).

A chapter 7 discharge prohibits "the collection of all of the debtor's pre-bankruptcy debts, except those debts expressly excepted from discharge under § 523(a)." Dickerson, 510 B.R. at 296. "A party that knowingly violates the discharge injunction can be held in contempt under § 105(a)." Nash v. Clark Co. Dist. Attorney's Office (In re Nash), 464 B.R. 874, 880 (9th Cir. BAP 2012); see Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193, 1205 n.7 (9th Cir. 2008), aff'd, 559 U.S. 260 (2010). The violation must be willful. Jarvar v. Title Cash of Mont., Inc. (In re Jarvar), 422 B.R. 242, 250 (Bankr. D. Mont. 2009) ("Willful violation of the § 524(a)(2) injunction warrants the finding of contempt"). "To prove that a sanctionable violation of the discharge injunction has occurred, the debtor must show that the creditor: '(1) knew the

---

[20] On September 24, 2014, the Declaration of Taylor F. Williams Re Submission of "Request for Dismissal" [Dkt. # 49] was filed in the case. Attached to the declaration is a copy of a document entitled "Request for Dismissal" which references the LACS Case and is marked "received" by the state court on September 24, 2014. The court takes judicial notice that Lopez filed a complaint in Adversary No. 9:14-ap-01139-PC, Lopez v. Ziv, in the United States Bankruptcy Court, Central District of California, Northern Division, seeking a determination that her claim against Ziv is nondischargeable under §523(a)(2)(A), (a)(4) and (a)(6).

8

discharge injunction was applicable and (2) intended the actions which violated the injunction.'" Nash, 464 B.R. at 880 (quoting Espinosa, 553 F.3d at 1205 n.7).

"The courts have employed an objective test in determining whether an injunction should be enforced via the contempt power." Bassett v. Am. Gen Fin. (In re Bassett), 255 B.R. 747, 758 (9th Cir. BAP 2000), rev'd on other grounds, 285 F.3d 882 (9th Cir. 2002). "In determining whether the contemnor violated the stay, the focus 'is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue.'" Lindblade v. Knupfer (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003) (citation omitted). "In other words, a creditor may not hide its eyes to the discharge injunction to avoid its reach." Dickerson, 510 B.R. at 303. "A party's negligence or absence of intent to violate the discharge order is not a defense against a motion for contempt." Jarvar, 422 B.R. at 250.

The moving party must prove by clear and convincing evidence that the offending party violated the discharge order and that sanctions are justified. Espinosa, 553 F.3d at 1205 n.7; Nash, 464 B.R. at 880. If adequate proof is produced, the burden then shifts to the offending party to demonstrate why it was unable to comply with the discharge injunction. See Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002); F.T.C. v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999); Dickerson, 510 B.R. at 298. The bankruptcy court has broad discretion in fashioning a remedy for violation of the discharge injunction. Bassett, 255 B.R. at 758. If the court finds a willful violation of the discharge injunction, the court may award actual damages, punitive damages, attorneys' fees and costs to the debtor. See Espinosa, 553 F.3d at 1205 n.7; Nash, 464 B.R. at 880.

B. Ziv Has Established By Clear and Convincing Evidence that Lopez and Valencia Knew That the Discharge Injunction Applied to Lopez' Claim Against Ziv

It is undisputed that the CDA's arbitration award contained in the Resolution Letter resulted from a claim by Lopez against Ziv that arose prior to the filing of Ziv's chapter 7

petition on October 4, 2012. Lopez authorized Valencia to file the LACS Case to enforce the arbitration award and collect her claim against Ziv.[21]

On October 4, 2012, the filing of Ziv's bankruptcy petition stayed the continuation of the LACS Case and the actions of Lopez and Valencia to collect the arbitration award from Ziv. 11 U.S.C. § 362(a)(1) & (6). "The continuation against judicial actions includes the maintenance of collection actions filed in state court." Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1214 (9th Cir. 2002). The unjustified delay in the dismissal of a collection action, in and of itself, violates the automatic stay. Id. ("Sanctions are appropriate pursuant to § 362(h) because Eskanos willfully violated the automatic stay by maintaining the active collection action and unjustifiably delaying its dismissal [23 days] after receiving notice of the bankruptcy petition."). When Ziv's discharge was entered on January 28, 2013, the automatic stay was replaced by the discharge injunction. 11 U.S.C. § 524(a). See In re Barr, 457 B.R. 733, 735 (Bankr. N.D. Ill. 2011) ("Once the discharge is entered, it supplants the automatic stay of 11 U.S.C. § 362(a) . . . .").

There is no evidence that either Lopez or Valencia had actual or constructive knowledge of Ziv's bankruptcy case prior to December 16, 2013. But Lopez and Valencia had actual knowledge of his bankruptcy case after Faith's letter dated December 16, 2013, and a duty to take affirmative steps to stop the litigation and dismiss the LACS Case. Faith's letter advised Valencia that Ziv and his spouse had filed a voluntary chapter 7 petition. Faith gave Valencia the correct bankruptcy case number for Ziv's personal bankruptcy, together with a copy of their personal bankruptcy petition. Valencia admits not only receiving Faith's letter, but understanding that Ziv was in bankruptcy and that at the very least the automatic stay applied to

---

[21] Lopez retained Valencia to enforce and collect the arbitration award against Ziv. Valencia had an ethical duty to follow Lopez' instructions and to keep Lopez informed regarding his efforts to collect the debt. There being no evidence to the contrary, the court attributes Valencia's knowledge of facts concerning Ziv's personal bankruptcy to his client, Lopez. Valencia's email to Margulies on July 11, 2014, confirms that Valencia was acting on instructions from Lopez when he refused to dismiss the LACS Case absent authority from his client. Ziv Exhibits, Exh. # H:58 ("[I]t is my intention to dismiss Dr. Ziv just as soon as my client contacts me . . . and authorizes me to dismiss the suit against Dr. Ziv.").

10

the LACS Case. Valencia quibbles with the fact that Faith's letter states "confusingly" that a discharge injunction was created at the closing of the case. But Valencia and his client, Lopez "knew something was in place, whether it be the automatic stay or the discharge injunction, that precluded them from pursuing [Ziv] personally for the debt." See Rosales v. Wallace (In re Wallace), 2012 WL 2401871, *6 (9th Cir BAP 2012). Yet they did nothing.

Despite having an obligation to do so, Lopez and Valencia did not take affirmative steps to dismiss the LACS Case ostensibly because Faith's letter "did not demand, request or suggest the dismissal of the LACS Case." Nor does it appear that Lopez and Valencia took action to properly investigate the status of Ziv's bankruptcy after receiving actual notice thereof. Lopez and Valencia continued to do nothing notwithstanding three more letters and extensive email correspondence by Ziv's attorneys to Valencia over a period of seven months between December 16, 2013 and July 23, 2014, demanding that Valencia dismiss the LACS Case and cease his efforts to collect from Ziv on behalf of Lopez.

In their opposition, Lopez and Valencia assert erroneously that "[a]n unscheduled debt, as to which no party has yet sought a determination of nondischargeability under F.R.Bankr.P. Rule 4007, cannot be the subject of a contempt finding."[22] Lopez and Valencia reason that Lopez' claim is nondischargeable under § 523(a)(2), (a)(4) and (a)(6), so "under the Beezley standard, Ziv's debt to Lopez was not necessarily discharged, and hence no contempt was committed."[23]

First, according to the complaint, the claim that forms the basis of the LACS Case filed by Lopez against Ziv is not a fraud claim. Lopez complained to the CDA about the quality and cost of treatment received from Ziv prior to the filing of his bankruptcy petition. She demanded a refund and received an award of $30,530 from the CDA for which she sought enforcement and collection through the LACS Case. There is no mention of fraud in either the Resolution Letter or the complaint in the LACS Case. In fact, Lopez and Valencia did not assert that Lopez had a

---

[22] Opposition, 16:21-23.

[23] Id. at 9:18-19.

fraud claim against Ziv until they filed their opposition to the court's OSC on September 9, 2014.[24]

Second, the Ninth Circuit in Beezley held that in a no-asset chapter 7 case in which no claims bar date is set, all prepetition debts, other than those falling within § 523(a)(2), (4) or (6), are discharged, whether scheduled or unscheduled. Beezley, 994 F.2d at 1436. Because no deadline is set for the filing of claims, the time for filing a proof of claim does not expire and lack of notice to a creditor does not deprive the creditor of the opportunity to file a timely proof of claim. Id. If the debt falls within § 523(a)(2), (4) or (6), the debt is not discharged by virtue of § 523(a)(3)(B). Id. at 1437. Beezley does not state nor can it be read to support the notion that a creditor, who holds a prepetition claim that is both (a) unscheduled in a no-asset chapter 7 case and (b) might be nondischargeable under § 523(a)(2), (4) or (6), is free notwithstanding the debtor's discharge to enforce and collect the claim without first obtaining a judicial determination of nondischargeability.

Despite the fact that Lopez was neither listed as a creditor nor given notice of Ziv's bankruptcy filing, Lopez and Valencia were enjoined from enforcing and collecting Lopez' claim by virtue of the discharge entered in Ziv's no-asset chapter 7 case absent a determination that her debt was nondischargeable under § 523(a)(2), (4) or (6). Faith's December 16th letter gave Lopez and Valencia actual notice of Ziv's bankruptcy case. Faith cited the Beezley case in his letter and explained that, because Ziv's bankruptcy was a "no-asset" case, the discharge applied to any debt owed to any individual or organization whether or not it was listed in the bankruptcy schedules. "A creditor is not free to violate the discharge injunction because it has doubts as to the validity of the discharge." Espinosa, 553 F.3d at 1205 n.7. Under no circumstances were Lopez and Valencia authorized to ignore Faith's letter, turn a blind eye to the discharge injunction, maintain an active collection action, unjustifiably delay its dismissal, and in the process side-step the need to prove nondischargeability. Only nondischargeable claims

---

[24] Id. at 9:1-3 ("Lopez contends that Ziv defrauded her out of over $80,000.00 by not providing the promised services, and then not refunding her payment for such services in violation of the California Dental Association's Code of Ethics.").

escape the discharge injunction, and the issue of whether Lopez' claim against Ziv is in fact nondischargeable remains to be adjudicated.

Finally, Lopez and Valencia argue that because Ziv seeks a finding of contempt and the imposition of sanctions for enforcement of an unscheduled debt, it is Ziv's burden to establish by clear and convincing evidence, as part of his prima facie case, that none of the exceptions to discharge under § 523(a)(2), (4) or (6) apply to the debt by operation of § 523(a)(3)(B), citing In re Azevedo, 506 B.R. 277 (Bankr. E.D. Cal. 2014). In Azevedo, a bankruptcy court recently held that a debtor, who seeks contempt sanctions against an unscheduled creditor for violation of the discharge injunction in the context of a no-asset chapter 7 case, must prove by clear and convincing evidence not only (1) that the creditor knew the discharge injunction was applicable and (2) intended the actions which violated the injunction, but also "that none of the exceptions to discharge under § 523(a)(2), (4), and (6) apply to the debt by operation of § 523(a)(3)(B)." Id. at 283. The court disagrees with Azevedo and will not follow the decision for two reasons.

First, Azevedo is not binding on this court. Second and more importantly, the standard applied in Azevedo is simply wrong. As a general rule, a scheduled creditor with notice of the bankruptcy must not take action to enforce or collect its claim, and must timely file a complaint to establish by a preponderance of the evidence that its claim is nondischargeable before the claim can be enforced against the debtor notwithstanding the discharge injunction. Azevedo hamstrings a debtor from invoking the court's contempt power to stop the actions of an unscheduled creditor in a no-asset chapter 7 case to enforce and collect a debt, notwithstanding the entry of a discharge, absent clear and convincing evidence that the debt is not a nondischargeable debt under § 523(a)(2), (4), or (6). Azevedo effectively shifts the burden from the unscheduled creditor to establish nondischargeability by a preponderance of evidence under § 523(a)(2), (4), or (6) to the debtor to establish by clear and convincing evidence the lack of grounds for nondischargeability under § 523(a)(2), (4), and (6). Why would such a creditor ever seek a judicial determination of nondischargeability when, under Azevedo, it can roll the dice, proceed relentlessly to collect against the debtor, and avoid contempt if the debtor is unable to prove by clear and convincing evidence that the debt is not nondischargeable? Such a result, in

the court's view, is inconsistent with Beezley, the strict construction of discharge exceptions under § 523, and the fresh start policy of the Code.

Based on the foregoing, the court concludes that Ziv has established by clear and convincing evidence that Lopez and Valencia were aware of the discharge injunction as early as December 16, 2013, and knew it applied to prohibit the enforcement and collection of Lopez' claim against Ziv. Their actions may have been predicated on a fundamental misconception of relevant bankruptcy law, coupled with flawed advice received from two unidentified attorneys, but their subjective belief that the debt was excepted from discharge is not a defense to Ziv's motion for contempt.

C. <u>Ziv has Established by Clear and Convincing Evidence that Lopez and Valencia Intended the Actions that Violated the Discharge Injunction</u>

The court further concludes that Ziv has shown by clear and convincing evidence that Lopez and Valencia intended the actions they took after December 16, 2013, which violated the discharge injunction. The fact that Lopez and Valencia might not have understood that their actions violated the Ziv's discharge injunction is not relevant. Hardy, 97 F.3d at 1390. It is sufficient if they "intended the actions that violated the injunction." Espinosa, 553 F.3d at 1205 n.7; Nash, 464 B.R. at 880. Ziv gave Lopez and Valencia actual notice of his personal bankruptcy case and the the discharge entered in such case, and repeatedly requested that Lopez and Valencia stop their efforts in the LACS Case to enforce and collect on account of Lopez' prepetition claim. Lopez and Valencia have not demonstrated why they were unable to comply with the discharge injunction. Lopez and Valencia, with knowledge of the discharge injunction, failed to take timely and appropriate action to stop collection efforts and dismiss the LACS Case.

CONCLUSION

For the reasons stated, the court concludes that Lopez and Valencia should be held in contempt for repeatedly violating the discharge injunction in this case. Having found a willful violation of the discharge injunction, the court may award actual damages, punitive damages, attorneys' fees and costs to Ziv. See Espinosa, 553 F.3d at 1205 n.7; Nash, 464 B.R. at 880.

However, the court must "at the very least, impose sanctions to the extent necessary to make [the debtor] whole." <u>Espinosa</u>, 553 F.3d at 1205 n.7. Accordingly,

1. Ziv must, not later than November 25, 2014, file and serve a supplemental motion, together with supporting declaration(s), establishing the basis for and amount of actual damages, punitive damages, attorneys' fees and costs, if any, sought by Ziv as proximately caused by Lopez and Valencia's willful violation of the discharge injunction;

2. Lopez and Valencia must, not later than December 23, 2014, file and serve a supplemental response, together with supporting declarations(s), in opposition to the actual damages, punitive damages, attorneys' fees and costs, if any, sought by Ziv;

3. Ziv must, not later than January 6, 2015, file and serve a reply; and

4. A hearing on the issue of damages is set for 10:00 a.m. on January 20, 2015, in Courtroom # 201, United States Bankruptcy Court, 1415 State Street, Santa Barbara, CA 93101.

A separate order will be entered consistent with this Memorandum Decision.

###

Date: October 23, 2014

Peter H. Carroll
United States Bankruptcy Judge